(722 P.2d 1131)
No. 58,836

State of Kansas, *Appellee*, v. Leroy Miller, *Appellant*.

Petition for review denied November 13, 1986.

Opinion filed July 31, 1986.

*Karen E. Mayberry*, legal intern, *Steven R. Zinn*, supervising attorney, Kansas Appellate Practice Clinic, of Lawrence, and *Benjamin C. Wood*, chief appellate defender, of Topeka, for appellant.

*Carla J. Stovall*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before Brazil, P.J., Meyer, J., and William F. Lyle, Jr., District Judge, assigned.

Meyer, J.: The defendant, Leroy Miller, appeals his convictions of aggravated incest, K.S.A. 1985 Supp. 21-3603. He contends (1) that the court erred in not granting him a mistrial upon learning of a juror's hearing difficulties, (2) that it also erred in holding that defendant's threats of violence to his victims constituted concealment which tolled the statute of limitations, and (3) that the evidence was not sufficient to support his convictions.

The victims are defendant's stepdaughters, T. J. and D. J., who at the time of trial were 7 and 11 years old respectively. The counts allegedly involved the respective victims as indicated and occurred at the following times and places:

Count 1: T.J., on or about September 26, 1984, in a "peach" house in Cherokee;

Count 2: T.J., between April 12, 1982, and July 23, 1982, in a "green" house in Pittsburg; and .

Count 3: D.J., between June 28, 1982, and July 23, 1982, in a "green" house in Pittsburg.

The color of the houses are given because the girls at times in their testimony state the times and scenes of the crimes as having occurred in, or while they lived in, the peach or green house. The dates given as to each count are what the State's evidence shows as to the period within which the defendant and the respective victim were present in such houses, and within the time frame when it is alleged the crimes occurred.

Other facts will be set out as we discuss the issues.

The defendant first contends that the trial court erred in not granting a mistrial upon learning of what defendant calls a "deaf juror," and that the sitting of such juror denied defendant a fair trial. The juror's hearing impairment came to light toward the end of the first day of trial when the juror advised the court that she had not heard any of the testimony of either T.J. or D.J., nor had she heard certain other remarks and testimony. The record reveals the following colloquy occurred:

"[JUROR]: Well, the only thing I find is a problem besides that is I can't hear the evidence and how can a juror really make a good juror. The counsels both of them are so soft spoken and maybe it's my age or something, but —

"THE COURT: You are having trouble hearing?

"[JUROR]: I just had a hearing test in Joplin. He said I didn't need a hearing aid, but I'm willing to have one, but the children I could not understand at all.

"THE COURT: Well, I think everyone had problems hearing the children.

"[JUROR]: You projected. You were right in front of the jurors. I heard you better than almost any of the other ones.

"THE COURT: Would it help if you sat down in front?

"[JUROR]: No, no, I don't think so. They were too soft spoken: you and you — the counsels.

. . . .

"[JUROR]: But you asked me what else was bothering me and I think the people around me cannot hear everything, but it's hard to make a decision when you can't hear the evidence.

. . . .

"[JUROR]: See, I couldn't hear very well. All of a sudden they said Lawrence so it made me think of Lawrence.

. . . .

"[JUROR]: I heard nothing the girls said only indicating nods and shakes.

"[DEFENSE COUNSEL]: Did you hear it when the court reporter read to you?

"[JUROR]: No, you didn't read very loud either so maybe I shouldn't be on this if I'm that deaf."

None of the other jurors, when asked, indicated they had trouble hearing the evidence. The juror who said she had not heard the testimony was moved to the front row.

Whether a person is qualified or competent to sit as a juror is a question for determination by the trial court and its ruling thereon will not be disturbed unless it is clearly erroneous or there has been an abuse of discretion. *State v. Folkerts*, 229 Kan. 608, Syl. ¶ 6, 629 P.2d 173 (1981); *State v. Sanders*, 223 Kan. 273, 275-76, 574 P.2d 559 (1977). K.S.A. 43-159 provides:

"In addition to the persons excused from jury service in K.S.A. 43-158, the following persons *may be excused* from jury service by the court: (a) Persons so physically or mentally infirm as to be unequal to the task of ordinary jury duty." (Emphasis added.)

When a question of abuse of discretion is posed, the appellate court reviews the trial court decision to determine whether there has been a clear abuse of discretion. "[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court." *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).

The juror involved in this issue advised the court that she could not hear either T.J. or D.J., that she could not hear either counsel, and that she could not hear the court reporter. The trial judge said he believed the juror was "overstating" her inability to hear critical testimony, questions, and repetition of the record. Although a juror's competence is a matter for judicial determination, a juror's specific statement of such a factual matter, that is, what he or she could or could not hear, should control over a judge's opinion regarding the juror's ability to hear in the absence of some indication of insincerity or falsehood on the part of the juror. Also, the fact that a juror on voir dire did not state he or she had a hearing impairment, standing alone, will not ordinarily be dispositive on the issue since the juror would not necessarily be aware of what was not heard. See *State v. Berberian*, 118 R. I. 413, 420, 374 A.2d 778 (1977).

The standard in Kansas as to whether a trial court erred in failing to excuse a juror is that such ruling will not be disturbed unless it is "clearly erroneous or there has been an abuse of discretion." *Folkerts*, 229 Kan. 608, Syl. ¶ 6.

We have been cited to no Kansas case, and have found none, directly in point. Turning, however, to the law of other states, we note that in *Commonwealth v. Brown*, 231 Pa. Super. 431, 436, 332 A.2d 828 (1974), the court stated that "[w]hile a juror is not disqualified per se because of his deafness, [citation omitted] where the deafness is of such degree as to indicate that the juror may not have heard material testimony, the juror must be disqualified, rendering any verdict he gave as meaningless."

The rule that the appellate court is not a factfinding court is so well known and often stated that citations are unnecessary. However, here the trial judge did not make a finding that the juror could hear; he merely said he thought the juror had "overstated." Such a conclusion is not sufficient when dealing with a situation more within the knowledge of the juror than within that of the court. In the absence of a showing of insincerity or falsehood on the part of this juror, when faced with a claim by such juror that she has not heard material testimony, the court should have discharged her for cause; and absent a waiver by the defendant, the court should have declared a mistrial.

We hold that the refusal to sustain a motion for mistrial under the circumstances hereinabove set out was an abuse of discretion.

While defendant also contends the evidence was insufficient to support his convictions, we need not address this issue because of our holding in the first issue herein.

Finally, defendant contends the trial court erred in ruling that defendant's threats to T.J. and D.J. constituted concealment of the crime, thus tolling the statute of limitations as to counts 2 and 3.

The testimony of T.J. and D.J. revealed that defendant threatened to hurt them if they told anyone about the crime. The trial court ruled that these threats constituted concealment of the crimes pursuant to K.S.A. 21-3106(3)(c), thus tolling the two-year statue of limitations. This ruling is contrary to the recent decision of our supreme court in *State v. Bentley*, 239 Kan. 334, 721 P.2d 227 (1986). In *Bentley*, the court interpreted K.S.A. 21-3106(3)(c) (which provides that concealment is an exception to the two-year criminal statute of limitations) to mean that threats made by the defendant to his nine-year-old victim of sexual abuse not to tell

anyone what happened did not constitute concealment under that statute. *Bentley,* 239 Kan. 334, Syl. ¶ 2.

*Bentley* is directly in point on the statute of limitations issue in this case. The latest possible date that the acts charged in counts 2 and 3 could have occurred was July 23, 1982, and the information was filed on February 1, 1985. This requires that the convictions under counts 2 and 3 be reversed and the defendant discharged as to those two counts. We are aware that at the time of the decision the trial court did not have the benefit of the *Bentley* decision. The State, on appeal, argues another ground for tolling the statute of limitation—absence of the defendant from the State of Kansas, K.S.A. 21-3106(3)(a). *Bentley,* as we have said, controls insofar as concealment by threat is concerned, and the fact that, not having the benefit of the *Bentley* decision, the trial court held the statute was tolled was probably the reason the State did not argue at trial that defendant's absence from the state tolled the statute. Nevertheless, for whatever reason, this issue was not raised in the trial court, and this court under the direction of *State v. Kelly,* 204 Kan. 715, 716, 466 P.2d 350 (1970), should not consider it for the first time on appeal.

The trial court is reversed as to counts 2 and 3, and it is ordered that defendant be discharged as to those counts. The trial court is reversed as to count 1, and same is remanded to the trial court with instructions that defendant be afforded a new trial as to such count.