**STATE of Iowa, Appellee,**

v.

**Frank Lee MITCHELL, Appellant.**

No. 97–206.

Supreme Court of Iowa.

Dec. 24, 1997.

Brian L. Yung of Bennett, Crimmins & Yung, Fort Dodge, for appellant.

Thomas J. Miller, Attorney General, Julie H. Brown, Assistant Attorney General, and Cynthia Goins–Voorde, County Attorney, for appellee.

Considered by HARRIS, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

Defendant, Frank Lee Mitchell, stands convicted of delivering a controlled substance in violation of Iowa Code section 124.401(1)(d) (1995). He seeks reversal because, during voir dire, the court rejected his challenge to a juror who claimed a hearing impairment. Because the record on appeal reveals no abuse of the trial court's broad discretion in ruling on Mitchell's challenge for cause, we affirm.

Iowa Rule of Criminal Procedure 17 governs, among other things, the court's response when a litigant challenges a juror's physical ability to serve as a juror. Subsection 5(c) of the rule authorizes a challenge for cause based on

> [u]nsoundness of mind, or such defects in the faculties of the mind or the organs of the body as render the juror *incapable* of performing the duties of a juror.

Iowa R.Crim. P. 17(5)(c) (emphasis added). The rule then directs the examination of the juror in accordance with the rules of evidence, after which the court "must allow or disallow the challenge." Iowa R.Crim. P. 17(6). The court's ruling is reviewed by this court on appeal under an abuse-of-discretion

standard. *State v. Tillman*, 514 N.W.2d 105, 107 (Iowa 1994). We give broad discretion to the court in its ruling on such challenges. *Id.*

Mitchell concedes the general rule that recognizes the wide latitude given trial courts in their assessment of juror qualifications. *See generally* Jean E. Maess, Annotation, *Deafness of Juror as Ground for Impeaching Verdict, or Securing New Trial or Reversal on Appeal*, 38 A.L.R.4th 1170, 1173–74 (1985). His appeal rests on the claim that the court demonstrably abused its discretion in two respects: first, by failing to adequately assess the hearing ability of the challenged juror and, second, treating a similarly impaired juror differently. As the following excerpts from the transcript reveal, however, neither claim is borne out by the record.

During voir dire, the court questioned the potential jurors about matters affecting their ability to serve. When asked whether anyone had a hearing problem, two jurors responded. The following exchange took place:

COURT: ... Do any of you have problems, first of all, hearing me? Twenty-seven? Yes, ma'am, your name is?

MARIE PETERSEN: I can't hear right now in the echo. Part of it I can get, part of it I can't, and I've got two hearing aids, but only one functions right at the present.

THE COURT: Would you tell me your first name?

MARIE PETERSEN: Marie Petersen.

THE COURT: Mrs. Petersen, if you were sitting closer would you be able to hear me?

MARIE PETERSEN: Might.

THE COURT: All right. When I ask about hearing—

MARIE PETERSEN: Depends on the person talking, soft voice.

THE COURT: The witnesses and the attorneys, that's their obligation to make sure that their witnesses speak up and that they speak up so that you can hear. It's my job is to make sure you're put somewhere if you're chosen right up here close by where you can hear the witnesses, you can hear me and you can hear the attorneys. You would have no problem with that, would that be correct?

MARIE PETERSEN: Probably not.

THE COURT: This courtroom has quite an echo. It's not as bad as some, some of the big ones in Boone and Marshall County just echo.

MARIE PETERSEN: It echoes now once in awhile, but I can get part of the words and part I can't.

THE COURT: All right. Anyone else have any hearing problem?

JOHN CARSTENS: Yes. John Carstens.

THE COURT: Mr. Carstens.

JOHN CARSTENS: Yes.

THE COURT: Can you hear me when I'm talking to you?

JOHN CARSTENS: I beg your pardon?

THE COURT: Can you hear me? Can you hear me when I'm talking to you?

JOHN CARSTENS: Uh-huh, part of the time.

THE COURT: All right. Do you wear a hearing aid?

JOHN CARSTENS: I have two of them.

THE COURT: All right. And if you were sitting up close would you be able to hear the witnesses here?

JOHN CARSTENS: One to one I'm all right, but you get any distance between me and the person that's talking I have problems.

THE COURT: All right. If you're chosen as a juror, please feel free to raise your hand and say that you don't hear something. That's very, very important, because as a juror we want you to be able to hear everything. All right. Anybody else have any hearing problems?

During the State's examination of the jurors for cause, the prosecutor engaged in this exchange with Mr. Carstens:

MS. VOORDE [prosecutor]: Mr. Carstens?

JOHN CARSTENS: I'm having trouble hearing you.

MS. VOORDE: That was something else I was just thinking as I was coming around here. If during the trial you would have difficulty hearing something that the witness would say or I would say, Mr. Fors would say or anything that was going on—

JOHN CARSTENS: Probably.

MS. VOORDE:—would you feel comfortable raising your hand or saying I'm not hearing just like you did with me?

JOHN CARSTENS: I'd hate to interrupt so often.

MS. VOORDE: All right. And you're sitting fairly close to me right now; right?

JOHN CARSTENS: I beg your pardon?

MS. VOORDE: You're fairly close to me right now?

JOHN CARSTENS: Uh-huh.

MS. VOORDE: And you've been having some difficulty?

JOHN CARSTENS: Yeah.

MS. VOORDE: All right. Your Honor, I'd ask that Mr. Carstens be excused for cause.

THE COURT: Mr. Fors? Mr. Fors?

MR. FORS: No objection.

THE COURT: Mr. Carstens, you can be excused.

■ Mrs. Petersen was then examined by the prosecutor. She expressed apprehension, stating that "if I don't hear right … then my nerves will give out on me." The prosecutor observed, on the record, that Mrs. Petersen was sitting farther back than Mr. Carstens. When asked if sitting closer to the witness box would assist her hearing, she responded that it would depend on the level of each speaker's voice. Mrs. Petersen reiterated that when she gets upset or "worked up," her hearing is affected.

The following exchange took place between defense counsel and Mrs. Petersen:

MR. FORS: Thank you very much. Mrs. Petersen, have you had any difficulty hearing me?

MARIE PETERSEN: Not while you're right here, but I'm afraid if I may construe what they said, take it different than what 'cause I can't hear and consequently I get very nervous.

MR. FORS: Are you nervous about the prospect of being a juror in this case?

MARIE PETERSEN: Yes, I am. I've never done anything like this. I'm quite keyed up.

MR. FORS: But I'm sure that everyone else is nervous.

MARIE PETERSEN: Well, I guess that too, but I think the problem with like I've got and some other individuals I think you're more that way.

MR. FORS: Do you think that your hearing problem rises to the level that you personally don't think you could sit and be an effective juror?

MARIE PETERSEN: That's about right, I don't think I could, and not be happy with myself, you're right.

MR. FORS: You just don't think that you could be an effective juror because of your hearing problems?

MARIE PETERSEN: That's right. It would affect my nerves and I just don't feel right.

MR. FORS: Thank you very much, Mrs. Petersen.

Based on this record, the court overruled Mitchell's challenge to Mrs. Petersen. We are convinced the court acted well within its discretion in doing so. The fact that the court ruled differently with respect to Mr. Carstens only reinforces our decision. As the colloquy between court and counsel reveals, Mrs. Petersen claimed difficulty hearing but gave direct and accurate responses to every question. The same cannot be said for Mr. Carstens. It is evident that he was unable to track with the discussion, repeatedly requiring the speakers to restate their questions.

■ We are also unpersuaded by Mitchell's claim that the court's assessment of Mrs. Petersen's faculties was insufficient as a matter of law. Although the record reveals no attempt by the court to "test" Mrs. Petersen's hearing, neither rule 17 nor the record itself demands a fuller examination. It is sufficient that the court witnessed firsthand

the challenged juror's capabilities in an actual courtroom setting.

■ Nor can the trial court be faulted, as Mitchell suggests, for "second-guessing" Mrs. Petersen's assessment of her own faculties. A juror's self-assessment may, in the proper case, carry great weight. *See, e.g., State v. Miller,* 11 Kan.App.2d 410, 722 P.2d 1131, 1133 (1986) (juror's precise identification of unheard testimony, in absence of finding of insincerity, outweighs court's opinion of juror's ability to hear). We are unwilling, however, to grant jurors what amounts to a "veto" over a duty we recently described as "the civic responsibility and privilege of all eligible citizens." *State v. Chidester,* 570 N.W.2d 78, 84 (Iowa 1997).

In sum, the record before us reveals a juror who was *uncomfortable* with the idea of jury service, not *incapable* of performing it. The decision to press a reluctant citizen into jury service falls squarely within the discretionary power of the trial court. We find no basis to disturb that judgment call here. No ground for reversal appears.

**AFFIRMED.**