No. 83,645

STATE OF KANSAS, *Appellee,*

v. QUINTON LAMAR HAYES, *Appellant.*

(17 P.3d 317)

Opinion filed January 26, 2001.

*Reid T. Nelson,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the briefs for appellant.

*Ann L. Smith,* special assistant county attorney, argued the cause, and *Robert C. Claus,* county attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

Six, J.: Defendant Quinton Hayes appeals his April 4, 1999, conviction for intentional second-degree murder. K.S.A. 21-3402. He contends that the district court erred in (1) failing to grant a mistrial upon learning of a juror's hearing difficulties, and (2) refusing to instruct the jury regarding (a) the lesser included offense of voluntary manslaughter and (b) voluntary intoxication.

Our jurisdiction is under K.S.A. 22-3601(b)(1) (a conviction resulting in a life sentence receives automatic review by this court).

We reverse and remand for a new trial. A mistrial should have been granted. Refusing to instruct the jury on voluntary manslaughter and voluntary intoxication was not error.

## FACTS

On November 28, 1999, Hayes attended a birthday party for his mother, Sheretta Chapman, at the Dixon Lodge in Coffeyville, Kansas. Hayes and two of his brothers, Stanley and Tony, were passengers in the car driven to the party by their father. Stanley was playing with a knife in the car. Hayes told Stanley to give the knife to him before Stanley got into trouble with it. Stanley did so.

Daryl Anderson, the victim, also attended Chapman's birthday party. Anderson was an acquaintance whom Hayes knew from the past. However, Hayes did not recognize Anderson. Later in the evening, Anderson and a friend saw Chapman talking to Hayes' brother Josh and resting against Anderson's car. Anderson told them to get off the car. Hayes walked outside of the Dixon Lodge and saw Chapman arguing with Anderson. Hayes and his brother Tony confronted Anderson. Hayes asked Anderson if he had a problem with his mother. There was no previous animosity between Hayes and Anderson. Tony hit Anderson. Anderson swung back, striking Hayes in the mouth. A fight between the Hayes brothers and Anderson ensued.

Witnesses testified that Anderson tried to get away by running into the street. Hayes and Tony followed him. Josh was trying to stop his brothers. Hayes and Tony continued to hit Anderson. Witnesses saw Hayes strike several forceful blows to Anderson's back and neck with a silver object. Anderson fell down just as the police arrived at the scene. After the fight, Hayes went to his aunt's house. He was crying when telling her that he had stabbed someone. Anderson died as a result of his injuries.

Hayes first told the police that his brother Tony had stabbed Anderson. Later, he admitted stabbing Anderson. He told police, "I didn't mean to hurt him. I didn't mean for him to die."

Dr. Erik Mitchell, a forensic pathologist, testified that (1) Anderson suffered at least 13 or 14 stab wounds, (2) 2 stab wounds to Anderson's back punctured his lung, (3) Anderson also had wounds through his arms and defensive wounds on his hands, and (4) the fatal stab wound to Anderson's neck pierced a large artery.

## DISCUSSION
### The Hearing-impaired Juror

First, Hayes contends that the district court erred in failing to grant a mistrial upon learning of a juror's hearing difficulties. He argues that reversible error occurred because one juror was hearing impaired and informed the court that he had heard none of Hayes' testimony. Hayes claims a violation of his rights under both the state and federal constitutions. He reasons that because this juror did not hear his testimony, his conviction violates his right to a fair trial under the Sixth Amendment to the United States Constitution (the right to an "impartial jury"). The Sixth Amendment is applied to the states through the due process clause of the Fourteenth Amendment. He argues that a new trial is warranted. We agree.

Whether a person is qualified or competent to sit as a juror is a question for determination by the district court. The district court's ruling will not be disturbed unless it is clearly erroneous or there has been an abuse of discretion. See *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999); *State v. Rainey*, 233 Kan. 13, 15, 660 P.2d 544 (1983). The legislature has provided for excusing persons with infirmities in K.S.A. 43-159:

"In addition to the persons excused from jury service in K.S.A. 43-158, the following persons *may be excused* from jury service by the court: (a) Person so physically or mentally infirm as to be unequal to the task of ordinary jury duty." (Emphasis added.)

The legislature has also required interpreters for any juror who is deaf. See K.S.A. 75- 4355a. We are not reviewing a 75-4355a juror issue here.

The jury retired to the jury room at 10:55 a.m. At 11:40 a.m., it submitted a question to the court. The district court had discharged the alternate jurors. In responding to the jurors' question, the following discussion took place:

"THE COURT: Presiding juror. One of the jurors wonders if he could get a transcript of the Defendant's testimony. He's hard of hearing. Um, I can't—and this is one of the reasons why we, both counsel and the Court repeatedly asked the Defendant to speak up. I was having trouble hearing him also. I don't know that you had to be hard of hearing not to hear a lot of that, but we can't give you

a—we don't have a transcript. We can't give you a transcript. Now, we do have the capability, and I would be willing, um, I—I normally, unless it's an aggravated situation, don't like to read back testimony, but if there's parts of testimony that people are wanting to—sometimes one may have thought they heard one thing, another may have thought they heard another thing, I don't mind trying to find those parts and reading them back. Is there anything in particular or any part in particular that we could go to?

"JUROR: *Your Honor, I couldn't hear anything.* [Emphasis added.]

"THE COURT: Okay. Well, I couldn't hear much either. Um, the—counsel, do you have any suggestions?

"MR. CULLINS [for the State]: None other than what the Court suggested that if there's something specific.

"THE COURT: Counsel?

"MR. CASEBEER [for the defendant]: I don't have an answer.

"THE COURT: I don't either. Um, I think the answer is what I've already provided. We—we take a record for appellate purposes, and that record is in very rough form. Some of you may have seen me following it on the computer, um, while people were testifying, but in order to massage that record into a form that anyone could make any sense takes a lot of time and a lot of work, so all I can tell you is that, um, if there's things that some of you heard that some of you didn't or some of you heard part of something maybe each of you can help [each other] out, but I—we don't have a transcript, and even if we did, I don't think I can read it to you, okay?

(JURORS INDICATING AFFIRMATIVELY.)

"THE COURT: Now, once again, if you have any questions about a certain area, let me know, and we'll try to find that and read that back to you, okay?"

Hayes' counsel moved for a mistrial. The district court denied the motion. The juror had not previously indicated a hearing impairment. During voir dire, three prospective jurors did say that they were hard of hearing. The record reflects that one of these individuals was struck from the jury panel. Another was chosen as an alternate, and the third person, M.W., served on the jury. However, there is no indication in the record that M.W. is the juror in question here.

Hayes relies on *State v. Miller*, 11 Kan. App. 2d 410, 722 P.2d 1131, *rev. denied* 240 Kan. 805 (1986), to support his contention that the court erred in refusing to declare a mistrial. Miller appealed his conviction for aggravated incest, arguing that the district court erred in failing to grant a mistrial upon learning of a juror's hearing difficulties. The victims in *Miller* were defendant's step-

daughters, who at the time of trial were 7 and 11 years old. The juror's hearing impairment in *Miller* came to light toward the end of the first day of trial, when the juror told the court that she had not heard any of the girls' testimony or certain other remarks and testimony. The juror also told the court that she could not hear the court reporter. The district court said it believed the juror was "overstating" her inability to hear critical testimony, questions, and repetition of the record. 11 Kan. App. 2d at 411-12.

We agree with the *Miller* court in balancing what a juror says with the trial judge's impressions:

"Although a juror's competence is a matter for judicial determination, a juror's specific statement of such a factual matter, that is, what he or she could or could not hear, should control over a judge's opinion regarding the juror's ability to hear in the absence of some indication of insincerity or falsehood on the part of the juror." 11 Kan. App. 2d at 412.

The *Miller* court also observed that the fact that a juror did not state he or she had a hearing impairment during voir dire, standing alone, will not ordinarily be dispositive on the issue, since the juror would not necessarily be aware of what was not heard. 11 Kan. App. 2d at 412. *Miller* held that the district court should have discharged the juror for cause and, absent a waiver by the defendant, should have declared a mistrial. 11 Kan. App. 2d at 413.

Two cases from sister jurisdictions are of interest. See *Commonwealth v. Brown*, 231 Pa. Super. 431, 436, 332 A.2d 828 (1974) ("While a juror is not disqualified per se because of his deafness, [citation omitted], where the deafness is of such degree as to indicate that the juror may have not heard material testimony, the juror must be disqualified, rendering any verdict he gave as meaningless."); *State v. Turner*, 186 Wis. 2d 277, 285, 521 N.W. 2d 148 (1994) (finding "it was critical for each juror to hear the testimony from each witness" and rejecting the State's contention that putting all the witnesses together may have yielded enough evidence to judge the defendant). We agree with the analysis in *Brown* and *Turner*.

The State here argues that (1) even though the juror could not hear Hayes' direct testimony, Hayes' statements to police had already been admitted into evidence on videotape, and the jury had

those tapes in the jury room, (2) witnesses testified regarding Hayes' statements about the stabbing, and (3) the evidence supporting Hayes' conviction was so overwhelming that there is little, if any, likelihood of changing the result of the trial.

In *State v. Myers*, 255 Kan. 3, 872 P.2d 236 (1994), we emphasized that K.S.A. 22-3420(3) imposes a duty upon the district court to read back testimony requested by a jury during deliberations. The jury in *Myers* asked for transcripts of witnesses' testimony. The district court simply refused. We concluded that the request was intended to be a "readback" of testimony, and the district court's failure to respond meaningfully to the readback request was an abuse of discretion. 255 Kan. at 3. If the jury requests to have testimony readback, it is proper for the district court to do so. However, we noted that the district court has the discretion to clarify the jury's readback request where the request is unclear or too broad, or the readback would jeopardize the manageability of the trial. 255 Kan. at 7-8. We reversed and remanded the case for a new trial, saying: "We can neither employ the 'harmless error' rule nor ignore the explicit nature of K.S.A. 22-3420(3) [testimony 'shall be read']." 255 Kan. at 9.

The juror here did not request a readback in order to refresh his memory; rather, the juror requested a transcript because he had heard none of Hayes' testimony. Hayes' state and federal constitutional rights to an impartial jury and due process were infringed upon here. See United States Const. Sixth Amendment (trial by an impartial jury); United States Const. 14th Amendment (due process of law); Kan. Const. Bill of Rights, § 5 (trial by jury); Kan. Const. Bill of Rights § 10 (trial by "an impartial jury"). The district court found that the juror heard none of Hayes' testimony.

The district court erred in refusing to declare a mistrial.

## The Instructions

We cannot predict how the facts will play out in a second trial. However, we will comment on Hayes' claimed error in jury instructions to provide a degree of guidance to the bench and counsel on retrial.

Hayes contends that the district court erred in failing to instruct the jury with Pattern Instructions for Kansas (PIK) Crim. 3d 56.05 (voluntary manslaughter).

Because Hayes requested the instruction we are required to view the evidence in the light most favorable to him. He is entitled to an instruction on the law applicable to his theories for which there is supporting evidence. *State v. Sims*, 265 Kan. 166, 168, 960 P.2d 1271 (1998).

Voluntary manslaughter is a lesser included offense to second-degree murder. *State v. Bell*, 266 Kan. 896, 904, 975 P.2d 239 (1999). However, in Hayes' case, the district court found that the evidence did not support a voluntary manslaughter instruction. There is "[n]o duty to instruct the jury on a lesser included offense . . . where the evidence as a whole, viewed in the light most favorable to the defendant, could not reasonably support a jury verdict on the lesser included offense." *State v. Simkins*, 269 Kan. 84, 90, 3 P.3d 1274 (2000). A review of the facts supports the district court's ruling.

Hayes argues that the district court should have given the instruction on voluntary manslaughter under the theory of a sudden quarrel. To prove voluntary manslaughter, a killing must be intentional, and there must have been legally sufficient provocation. *State v. Cheeks*, 258 Kan. 581, 590, 908 P.2d 175 (1995). The test of the sufficiency of the provocation is objective, not subjective. We have said: " ' "The provocation, whether it be 'sudden quarrel' or some other form of provocation, must be sufficient to cause an ordinary man [or woman] to lose control of his actions and his reason.' " [Citation omitted.]" *State v. Moncla*, 262 Kan. 58, 74, 936 P.2d 727 (1997). See also *State v. Hill*, 242 Kan. 68, 74, 744 P.2d 1228 (1987) (" 'Such emotional state of mind [heat of passion] must be of such a degree as would cause an ordinary man to act on impulse without reflection.' ") A provocation must be more than mere words or gestures, and if assault or battery is involved, the defendant must have a reasonable belief that he or she is in danger of great bodily harm or at risk of death. *State v. McClanahan*, 254 Kan. 104, 114, 865 P.2d 1021 (1993).

Hayes argues that the facts show he was provoked because after Tony hit Anderson, Anderson hit Hayes. However, the district court found that this evidence was insufficient to show a sudden quarrel because Hayes was an instigator and "interjected himself" into a situation that did not involve him. We agree. See *State v. Mitchell*, 269 Kan. 349, 7 P.3d 1135 (2000); *State v. Clark*, 263 Kan. 370, 949 P.2d 1099 (1997).

Hayes relies on *State v. Hill*, 242 Kan. 68, 744 P.2d 1228 (1987), to support his contention that he was provoked by a sudden quarrel. *Hill* is distinguished by its facts. Hill was convicted of second-degree murder. Hill and others had gone to a bar in which the hallway was dark and crowded. As Hill went through the door, there was a lot of pushing and shoving. Patricia Jackson, the victim, cursed at Hill and hit her on the head. Jackson elbowed Hill and pushed her from behind. Hill pulled a gun out of her purse and fired it at Jackson, but she could not remember the act of shooting. We reversed the conviction, finding the district court erred in failing to instruct on voluntary manslaughter.

Here, the "quarrel" was between Chapman and Anderson, not Hayes and Anderson. The fistfight and stabbing began after Hayes and Tony walked up and cornered Anderson in the doorway of the car. Witnesses testified that Hayes, Tony, and possibly a few others fought Anderson, who was unarmed. Also, Hayes stabbed Anderson from behind.

Finally, Hayes contends that the district court erred by refusing to instruct the jury on his requested voluntary intoxication instruction. This contention lacks merit.

K.S.A. 21-3208(2) provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

A defendant may rely on the defense of voluntary intoxication where the crime charged requires specific intent, and a voluntary intoxication instruction is required if there is evidence to support the defense. *State v. Brown*, 258 Kan. 374, 386, 904 P.2d 985

(1995). Intentional second-degree murder is a specific intent crime. *State v. Pope*, 23 Kan. App. 2d 69, 73, 927 P.2d 503 (1996), *rev. denied* 261 Kan. 1088 (1997).

Here, the district court found that there was no evidence that Hayes was intoxicated. Hayes argues that there was evidence of intoxication because he testified that he was intoxicated at the time of the murder. Hayes also testified that he drank some beer and a pint of whiskey on the evening of the party. However, there was no evidence that Hayes' consumption of these substances impaired his mental faculties so as to render him unable to form the requisite intent. In fact, as the State observes, the evidence points to the opposite conclusion. Hayes' statements to police and his testimony showed that when he left the party shortly after stabbing Anderson, he went to his aunt's home in Independence. His aunt testified that Hayes told her he had stabbed a man and that they "sat up praying about it." She said Hayes was trying to tell her about the incident, but he was crying so hard that she could "hardly tell what he was saying," suggesting that Hayes was aware of his involvement in the events that night. Based on the record before us, the district court did not err by refusing to give an instruction regarding voluntary intoxication.

Reversed and remanded for a new trial.