# IN THE COURT OF APPEALS OF IOWA

No. 21-0359
Filed March 30, 2022

**CHRISTOPHER CRAIG THOMPSON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Allamakee County, Alan Heavens, Judge.

Christopher Thompson appeals the district court's denial of his postconviction-relief application. **AFFIRMED.**

David James Hanson of Hofmeyer & Hanson, P.C., Fayette, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Greer, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Christopher Thompson appeals the district court's denial of his application for postconviction relief (PCR). We determine that Thompson has not proved that trial counsel failed to perform an essential duty. As a result, we affirm the denial of Thompson's PCR application.

## I. Facts & Proceedings

Thompson and Angela Gabel lived together in a farmhouse with their eight-month-old son and Gabel's two teenage daughters. The couple's relationship was rocky. Thompson struggled with post-traumatic stress disorder (PTSD) and alcohol abuse. There were frequent arguments between Thompson and Gabel, some of which became physical.

On October 2, 2010, the Allamakee County Sheriff's Office and the Monona Police Department responded to a 911 call from Thompson stating that he had been in a fight with Gabel and that he shot her. When the officers arrived, they found Gabel, deceased, inside a car parked in front of the farmhouse. Thompson came out of the house initially with his child in his arms and then retreated into the house. Thompson ultimately surrendered and was taken into custody. Law enforcement conducted a breath test on Thompson, whose blood alcohol level was .184.

Thompson was charged with first-degree murder. A year later, a jury found Thompson guilty of second-degree murder, in violation of Iowa Code section 707.3 (2010). He was sentenced to a term of incarceration not to exceed fifty years, with a minimum term of thirty-five years of confinement. Thompson was ordered to pay $150,000 in victim restitution. Thompson appealed his conviction.

The Iowa Supreme Court summarized Thompson's interview with law enforcement in Thompson's direct appeal as follows:

> Thompson told officers that [he] began arguing [with Gabel] on the day of the incident sometime after the game they were watching ended. Thompson claimed Gabel was upset with him because he wanted to watch more football while she wanted to go have sex with him. Gabel decided to go to bed without him . . . . When Thompson came up later, she was asleep. He woke her up to have sex. Gabel told him it was too late. Thompson told the officers that her temper flared . . . . Gabel got out of bed and slapped him. Thompson then pushed her against the wall. Gabel left the room and ran downstairs and outside while they continued to yell at each other. . . . Once outside, Gabel climbed into her daughter's car after finding hers locked. Thompson, after watching from the deck, saw Gabel flip him off and saw her talking on her cell phone. Thompson believed Gabel was talking to his mother . . . . He was "pissed off" and went inside to retrieve a .22 caliber rifle from their bedroom.
> He came back out onto the deck with the rifle. Gabel flipped him off again. Without aiming, Thompson fired the gun at her from fifteen to twenty feet away. The bullet went through the driver's side window. He told police he only meant to scare her with the first shot, not kill her. He approached to find her breathing, but he could tell "she wasn't gonna make it." Thompson told officers he shot her a second time to "put her out of her misery." He was three feet away when he fired the second shot.

*State v. Thompson*, 836 N.W.2d 470, 474–75 (Iowa 2013).

The Iowa Supreme Court affirmed Thompson's conviction. *See id.* at 491. Following the issuance of procedendo, Thompson filed an application for PCR. He alleged ineffective assistance of counsel, claiming defense counsel failed to subpoena Dr. Arthur Konar to testify at the pretrial hearing about the victim's mental-health records and did not challenge a juror who Thompson argues could not serve because of a reading comprehension learning disability.[1] The

---

[1] Thompson's application also claimed defense counsel was ineffective for not showing the jury the complete three-hour interview between Thompson and law enforcement and in advising him not to testify at trial. The district court denied

application was amended twice. Trial on the amended application was held before the district court on March 12, 2021.

The district court dismissed the application in its entirety on March 16. The district court determined that Thompson did not show why Gabel's mental-health records would be valuable to the doctor's testimony. The district court also denied the claim that a juror was incompetent to perform his duties. Even though the juror struggled with reading comprehension, the district court assessed the juror and concluded he possessed qualities of someone with a sound mind, including the ability to understand and perform the necessary duties of a juror. Thompson appeals the district court's denial of his PCR application.

## II.    Standard of Review

We review ineffective-assistance-of-counsel claims de novo. *State v. Harrison*, 914 N.W.2d 178, 188 (Iowa 2018). To prevail on a claim of ineffective assistance of counsel, the applicant must prove that their trial counsel (1) failed to perform an essential duty, and (2) prejudice resulted. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

## III.    Ineffective Assistance

In determining an ineffective-assistance-of-counsel claim, we measure counsel's performance objectively, considering the totality of the circumstances, against prevailing professional norms. *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012). When determining whether counsel breached an essential duty, the

---

these claims but Thompson does not challenge the court's ruling on these issues on appeal.

applicant must show by a reasonable probability that trial counsel "performed below the standard demanded of a reasonably competent attorney." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). When determining prejudice, the applicant must prove that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Hopkins*, 576 N.W.2d 374, 378 (Iowa 1998). We presume that counsel performed competently unless the applicant shows otherwise. *State v. Booth-Harris*, 942 N.W.2d 562, 577 (Iowa 2020).

### A.    Failure to Subpoena Expert Witness

We first address Thompson's claim that he received ineffective assistance because his trial counsel did not subpoena the defense's expert witness, Dr. Konar, to testify at the pretrial hearing about the necessity of reviewing Gabel's mental-health records. Thompson requested Gabel's mental-health records, claiming that they could contain information that Gabel was prone to manipulation, violence, and anger, which he argued could exacerbate his PTSD symptoms. Thompson also argued that the records would be "very valuable" to Dr. Konar. Prior to the initial criminal proceedings, the trial court denied the request, finding that facts about Gabel and Thompson's PTSD defense had already been presented by depositions and other sources. The supreme court agreed. *See Thompson*, 836 N.W.2d at 491.

Thompson now asserts that had his trial counsel called Dr. Konar to testify, Dr. Konar would have explained to the court the significant effect Gabel's aggression produced on Thompson. Because he did not gain access to these records, Thompson argues the jury was never shown evidence that Gabel's

aggression provoked his PTSD. He claims this evidence would have reduced the likelihood the jury would find that he had the specific intent to commit murder and would have likely led to a different jury verdict. We determine Thompson did not meet his burden to show his trial counsel failed to perform an essential duty.

Dr. Konar did not testify at the PCR hearing. What Dr. Konar would have said concerning his ability to review mental-health records is absent from the court record. And as noted by the PCR court, the Iowa Supreme Court came to the following conclusion about Gabel's medical records:

> Thompson's PTSD was not disputed. He did not plead self-defense. Gabel's mental state was not at issue. The jury heard evidence regarding the conduct of Thompson and Gabel the night he shot her, as well as evidence concerning the nature of their relationship. Thompson was not entitled to go on a fishing expedition in her mental health records. He already had what he needed.

*Id.*

Thompson did not present evidence during the PCR proceedings that Dr. Konar would have provided the "nexus between the issues at trial and the mental health treatment received by Gabel" needed to gain access to the records. *See id.* at 490. And even if Thompson is correct that Dr. Konar would have found the mental-health records "very valuable," having Dr. Konar testify at the pretrial hearing would not have provided any new information outside the arguments trial counsel already made. The facts about Gabel's conduct for the PTSD defense had been presented through depositions and prior testimony and reports.

The jury heard testimony from Dr. Konar at trial that Thompson suffered from PTSD. Dr. Konar further testified that Thompson's PTSD coupled with alcohol abuse was "set off by a horribly dysfunctional intimate relationship with Ms.

Gabel." Simply put, the jury already possessed the necessary information. *See id.* Looking into Gabel's health records would have been a "fishing expedition" that Thompson had no right to undertake. *See id.* We determine trial counsel did not fail to perform an essential duty concerning this first claim.

### B. Failure to Lodge a Challenge to a Juror

Thompson also argues he received ineffective assistance because his trial counsel failed to challenge a juror for cause whose learning disability made him unable to carry out his necessary duties. Like Thompson's previous claim, this claim also fails.

Juror R.H. received notice of prospective jury service. Before selection, R.H. completed a juror questionnaire. He self-reported that he could "understand the English language in a written, spoken, or manually signed mode." Unknown to Thompson, R.H. had a learning disability that had been aggravated by a brain injury. Thompson's trial counsel did not challenge R.H. As part of the PCR proceedings, Thompson offered records of an evaluation of R.H. completed in 2013. R.H. scored around the fifth percentile on verbal comprehension testing and scored in the first percentile on reading vocabulary. He also scored "low average" on key areas like perceptual reasoning and working memory—while also scoring "average" on processing speed. The evaluation concluded that R.H. struggled with reading comprehension, but his processing speed allowed him to obtain new information through "non-verbal and 'hands on' direction." Ultimately, the evaluators concluded that he needed verbal instruction. Thompson argues that this evaluation proves that R.H. was unfit to be a juror and his trial counsel was ineffective because they failed to identify this.

As discussed above, Thompson must prove his trial counsel failed an essential duty. *See Maxwell*, 743 N.W.2d at 195. We find that Thompson has not met his burden, as Thompson's trial counsel did not fail to perform an essential duty concerning this juror.

Thompson's trial counsel did not breach an essential duty in failing to challenge R.H because, as evidenced in the PCR hearing, R.H. answered the prospective juror questionnaire truthfully. When asked whether he could "understand the English language in a written, spoken[,] *or* manually signed mode," R.H. answered that he could. (Emphasis added.) "A juror's self-assessment may, in the proper case, carry great weight." *State v. Mitchell*, 573 N.W.2d 239, 242 (Iowa 1997). And the evaluation Thompson offers does not discredit R.H.'s answer. The evaluation confirms it.[2] When assessing R.H. at the PCR hearing and reading the trial transcript, the district court also found that R.H. possessed qualities of someone with a sound mind—"always" giving intelligent answers when questioned. "It is sufficient [when the] court witnessed firsthand the challenged juror's capabilities in an actual courtroom setting." *Id.* at 241–42.

Additionally, Thompson's trial counsel testified that he asked questions to all potential jurors and believed the jury was not prejudiced. Iowa Rule of Criminal Procedure 2.18(5)(c) provides grounds to challenge a prospective juror.[3] And when "reasonable doubts arise as to the competency of a juror, such juror should

---

[2] The evaluation concluded that R.H. needed verbal instruction, meaning that he could understand English language in a *spoken* mode.

[3] Under the rule, a juror can be challenged on the grounds of "unsoundness of mind, or such defects in the faculties of the mind or the organs of the body as render the juror incapable of performing the duties of a juror." Iowa R. Crim. P. 2.18(5)(c).

be excused." *State v. Rowe*, 26 N.W.2d 422, 425 (Iowa 1947). Yet a disability must be so severe that the prospective juror cannot determine whether a defendant is guilty or not guilty based on evidence presented by the parties and jury instructions given by the judge.[4] R.H.'s answers throughout trial thwarted Thompson's assertions that R.H. was unfit to serve. Thompson's trial counsel was not ineffective for failing to challenge a juror who had a reading comprehension disability, had answered questions truthfully throughout the proceedings, and did not evoke signs of being unable to serve as a juror. We find trial counsel did not fail to perform an essential duty.

## IV.    Conclusion.

We determine that trial counsel did not fail to perform an essential duty in failing to subpoena a defense expert to the pretrial hearing or in failing to challenge a juror's competency to serve. As we find no failure to perform an essential duty, we need not address the prejudice prong of the *Stickland* standard. *See State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003) ("Failure to demonstrate either element is fatal to a claim of ineffective assistance."). We affirm the district court's decision denying Thompson's PCR application.

**AFFIRMED.**

---

[4] Iowa Criminal Jury Instruction 100.8 holds that the sole duty of a juror is "to find the truth and do justice."