No. 99,641

STATE OF KANSAS, *Appellee,* v. GABRIEL MARTINEZ, *Appellant.*

(204 P.3d 601)

Opinion filed March 27, 2009.

*Reid T. Nelson,* of Capital and Conflicts Appeals Office, argued the cause and was on the brief for appellant.

*John J. Bryant,* assistant district attorney, argued the cause, and *Jerome A. Gorman,* district attorney, and *Stephen N. Six,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Gabriel Martinez appeals from his conviction of one count of premeditated first-degree murder and one count of criminal discharge of a firearm at an occupied vehicle. Jurisdiction lies with this court under K.S.A. 22-3601(b)(1).

On the night of December 23, 2006, brothers Jose David Contreras (David) and Nasser Contreras went to a Christmas Eve dance at the Rainbow Center in Kansas City, Kansas. They were there with various other family members and friends. At the Rainbow Center, Anthony Contreras pointed out a group of men with whom he had been experiencing trouble, including Martinez and Manny Lopez, who had shot at him on a previous occasion. Anthony turned to Lopez and blew him a kiss, whereupon Anthony's wife told Anthony that she wanted to leave.

Anthony; his wife, Sandra Contreras; David; and Nasser left the Rainbow Center and went to their sport utility vehicle (SUV). They were joined by their cousin, Andrew Torres, Jr. A group of three or four men, including Lopez and Martinez, followed them out to the parking lot. As the Contreras family was leaving, Sandra, who was driving their SUV, saw Martinez go to the rear of a car and retrieve something from the trunk. Martinez, Lopez, and one or two other men then began to follow the Contreras family at a distance of several car lengths.

The Contreras family group drove about 20 minutes to a McDonalds restaurant. They pulled into the drive-through lane and stopped, and they then began to hear gunshots from the street behind them. Sandra saw, out of the window, the car that had been following them. The windows of the SUV were shattered, and bullets struck David in the back of the head and Nasser in the back of his lower neck. David died as a result of the wound. Nasser eventually recovered.

Police located Lopez about 4 hours after the shooting. Using a photographic lineup, Lopez eventually identified Martinez as the shooter. About 10 hours later, police located Martinez. He waived his *Miranda* rights and gave an oral statement. In his statement, Martinez explained that he was afraid that the Contreras family

intended to rob him. He and his group were driving to a taco restaurant close by the McDonalds where the shooting occurred. They turned when they saw the SUV with Anthony in it, and Martinez used a gun that he called a "9" to fire at "him." Martinez identified himself as the only person who fired a weapon. After the shooting, the group drove to a bridge and threw the gun into a river.

Bullets and bullet fragments retrieved from the SUV and David's head were consistent with being fired from a .38-caliber-family firearm. This family would include a 9 mm caliber gun. Police found a fired 9 mm shell casing on the bridge near where Martinez said he had thrown the gun into the river.

Martinez was charged with one count of premeditated first-degree murder or, in the alternative, felony murder, and one count of criminal discharge of a firearm at an occupied vehicle. A jury found Martinez guilty of first-degree murder and of the count of criminal discharge of a firearm. The trial court sentenced Martinez to a hard 50 life sentence for premeditated murder and a concurrent term of 59 months' imprisonment for criminal discharge of a firearm at an occupied vehicle. Additional facts will be provided as necessary to the analysis of the issues presented. Martinez filed a timely notice of appeal.

Martinez raises two issues that stem from juror contact with the trial judge during jury deliberations. Two jurors approached the trial court to voice their concerns about the competence of a third juror. The court allowed the third juror to continue to participate in deliberations and judgment. First, Martinez contends his right to a unanimous verdict was prejudicially compromised by the presence of a juror of limited competence.

A trial court's decision whether to substitute one juror with an alternate is reviewed for abuse of discretion. *State v. Jones*, 283 Kan. 186, 203, 151 P.3d 22 (2007); see K.S.A. 22-3412(c). The defendant carries the burden of demonstrating substantial prejudice before an appellate court will find that the trial court abused its discretion. 283 Kan. at 203.

The jury began its deliberation on September 12, 2007. After the evening recess, one juror approached the trial judge in an ex

parte meeting and told him she was concerned about the behavior of another juror. The trial judge had the encounter transcribed. The juror expressed the following:

"I'm not an expert in my field. I work in the medical field. I'm a nurse. This juror displays behavioral mannerisms of a person that would be like — have autism or be autistic. And several of the things that he has stated during deliberations, not just myself, but other jurors have felt is very — well, inappropriate. You know, he like gazes off into space like he's not even there. When he does contribute to the conversation, he has to be asked to. And then when he does, it's almost like a child-like form in which he talks. I can't even — not that I would anyway because it's rude. I can't imitate the way he speaks.

"But it's very concerning to me as another juror that's on this jury if he's not mentally competent to make a decision regarding this case. I mean, there is a young man's life that could possibly be in — so I'm very concerned."

The trial judge instructed the juror to continue with deliberations and to discuss the matter with the presiding juror "if the jury feels that there's a problem."

The next morning, the trial judge called the parties together prior to the commencement of deliberations. In the presence of Martinez and counsel, both the concerned juror and the presiding juror addressed the court about their concerns. The presiding juror informed the court:

"There is a concern with the competence of him, is he mentally stable enough to make a decision based on evidence versus making a decision on his own opinions, his own morals, his own convictions.

. . . .
"When we first questioned him about his opinion about the case, he did make some valid statements as far as, you know, age statements. If he's old enough to do driving, if he's old enough to be responsible enough to keep a job, things like that, he's old enough to make the decision whether or not to take a man's life. And I believe that was a valid statement. But later on in our discussion he was making statements based on his opinion, well, if his parents knew he was in a gang and gangs are wrong, I'm going to convict him because he's in a gang.

"Personally, I think that's not according to evidence, that's just personal opinion. He's not really been focused on the evidence. He's been up and down, kind of looking out the window, in and out of the bathroom. I don't think he's just mentally pertaining himself to the evidence and to this case.

. . . .
". . . We talked upstairs in the jury lounge amongst ourselves and we — some of the people don't really feel comfortable making a solid judgment with him being a part of that based on his decision."

The State suggested replacement of the juror in question with an alternate juror, but Martinez' counsel objected, moving instead for a new trial. The trial judge stated his concern that "this juror is not going to decide this case based upon the evidence and law as he has been charged to do," but allowed the jury to continue deliberating with its original members. Later that day the jury returned guilty verdicts; the jury was polled and the decision was unanimous.

Martinez argues that the presence of an incompetent juror deprived him of his right to a unanimous jury verdict. He contends that *State v. Hayes*, 270 Kan. 535, 537, 17 P.3d 317 (2001), and *State v. Miller*, 11 Kan. App. 2d 410, 412, 722 P.2d 1131, *rev. denied* 240 Kan. 805 (1986), control the outcome in the present case. In *Hayes*, a juror was unable to hear trial testimony, and this court found the defendant's constitutional right to an impartial jury and to due process had been violated. 270 Kan. at 540. In *Miller*, a juror was unable to hear testimony and argument, and the Court of Appeals found it to be an abuse of discretion not to declare a mistrial. 11 Kan. App. 2d at 412-13.

In this case, two jurors gave their opinions that the third juror was not focused and was making child-like or inappropriate comments. It was not established, however, that the juror in question was actually incompetent or lacked the capacity to make an informed judgment. It was not established that the third juror was disregarding the evidence; in fact, the statements of the complaining jurors suggested that the juror in question had heard and understood the evidence. It was also not established that the third juror had made up his mind about guilt prior to hearing all the evidence. The complaints went to the third juror's thought processes, not to his competence to render an informed verdict. See *State v. Kirkpatrick*, 286 Kan. 329, 355, 184 P.3d 247 (2008) (where juror not shown to have prejudged case and not shown to have improperly influenced other jurors, no abuse of discretion in denying motion to recall jury).

Both our statutes and case law limit inquiry into the mental processes by which a juror reaches a verdict.

K.S.A. 60-441 provides:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

A verdict may not be impeached by questions concerning a juror's views or conclusions, the reasons for those views, the factors used in determining those conclusions, or what influenced those views or mental processes in reaching the juror's conclusions. See *State v. Cook*, 281 Kan. 961, 973, 976-78, 135 P.3d 1147 (2006); *Saucedo v. Winger*, 252 Kan. 718, 728-29, 850 P.2d 908 (1993); *State v. Johnson*, 40 Kan. App. 2d 1059, 1065-67, 198 P.3d 769 (2008).

Martinez essentially asks this court to require the trial court to inquire into the mental processes of one of the jurors. Such an inquiry is contrary to Kansas law. There is nothing in the record that establishes the existence of a mental impairment of a juror that deprived Martinez of his right to a unanimous verdict. The trial court did not abuse its discretion in permitting the jury to continue to deliberate notwithstanding the voiced concerns of two jurors.

Next, Martinez contends that the initial conversation between the first juror and the trial judge violated his statutory and constitutional right to be present at every critical stage of his trial. A claim that a defendant was deprived of his statutory and constitutional right to be present during a portion of his trial raises legal questions that are subject to unlimited review on appeal. *State v. Engelhardt*, 280 Kan. 113, 121, 119 P.3d 1148 (2005).

K.S.A. 22-3405(1) provides in relevant part: "The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law."

We have interpreted K.S.A. 22-3405(1) to mean that "a felony defendant must be present at any stage of the trial when the jury is in the courtroom or when the defendant's presence is essential to a fair and just determination of a substantial issue. The statutory

command of K.S.A. 22-3405(1) is analytically and functionally identical to the requirements under the Confrontation Clause and the Due Process Clause of the federal Constitution that a criminal defendant be present at any critical stage of the proceedings against him or her." *Engelhardt*, 280 Kan. 113, Syl. ¶ 2.

This court has held that ex parte communications between a trial judge and a juror violate a criminal defendant's constitutional right to be present at all critical stages of the trial. That constitutional right is grounded in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. McGinnes*, 266 Kan. 121, Syl. ¶ 1, 967 P.2d 763 (1998).

This right to be present at all critical stages of the trial is subject, however, to harmless error analysis. Before an error of constitutional magnitude may be declared harmless, the appellate court must be able to decide beyond a reasonable doubt that the error had little, if any, likelihood of changing the result of the trial. 266 Kan. 121, Syl. ¶ 3.

Several factors are significant in determining whether an ex parte communication between a trial judge and a juror may be declared harmless beyond a reasonable doubt: (1) the overall strength of the prosecution's case; (2) whether an objection was lodged; (3) whether the ex parte communication concerned a critical aspect of the trial or involved an innocuous and insignificant matter; and (4) the ability of the posttrial remedy to mitigate the constitutional error. 266 Kan. 121, Syl. ¶ 4.

The trial court erred in speaking with the first juror when she voiced concerns about a fellow juror without the presence of counsel and the defendant. Applying the *McGinnes* factors, the error was harmless. The overall strength of the prosecution's case was great. The defendant was seen in a car in close proximity to the shooting; he provided a confession in which he took sole responsibility for the shooting; and physical evidence corroborated certain aspects of his confession. The ex parte communication did not involve a critical aspect of the trial. The first juror did not receive instruction from the court except that she was to continue deliberating. It was the juror's statement to the judge that was at issue,

and the judge informed counsel of that statement following his discussion with the juror. Finally, the trial judge mitigated the harm created by conducting a hearing with counsel and Martinez present before the jury resumed any deliberations following the ex parte contact.

It is unclear what ultimately would have been different had counsel and Martinez been present at the first juror's meeting with the judge. The meeting was transcribed, and counsel and Martinez were able to review the transcript. The essence of the discussion was repeated shortly thereafter with the judge and a second juror— the presiding juror—with counsel and the defendant present, and the defense lodged its objection to replacing the third juror and moved for a mistrial at that time. The only difference was one of timing; the defendant might have been able to move for a mistrial earlier if he had been present at the first meeting between the juror and the court. Any error as a result of the trial court's ex parte juror contact was harmless.

Martinez next contends that the hard-50 sentence imposed should be vacated because it is unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Martinez claims that *Apprendi* requires a jury to make a finding as to the existence of aggravating factors when considering imposition of a hard-50 sentence. However, as Martinez notes, this issue has been disposed of adversely to him in *State v. Reed,* 282 Kan. 272, 282, 144 P.3d 677 (2006), and he does not present any grounds for reconsidering *Reed.*

For his final two issues, Martinez raises claims regarding the instructions submitted to the jury. First, Martinez contends that Jury Instruction No. 7, relating to proving intent, improperly shifted the burden of proof to him and the instruction was erroneous under the facts of the case.

An appellate court reviewing a district court's giving or failure to give a particular instruction applies a clearly erroneous standard where a party neither suggested an instruction nor objected to its omission. See K.S.A. 22-3414(3). An instruction is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the

trial error had not occurred. *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007).

Jury Instruction No. 7 reads in its entirety:

"Ordinarily, a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

Martinez did not object to the instruction at trial.

On appeal he contends the instruction allows the jury to disregard the State's burden of proving intent. This court has rejected this argument. See *State v. Stone*, 253 Kan. 105, 107, 853 P.2d 662 (1993) (instruction creates permissible inference rather than improper rebuttable presumption; therefore does not violate due process rights).

The absence of a timely objection renders it unnecessary to reexamine *Stone*. The evidence relating to intent was overwhelming, including Martinez' confession in which he stated that he was attempting to fire on individuals in the SUV. The instruction specifically informed the jury that it was never to shift the burden of proof to the defendant, and another instruction informed the jury that the State was required to prove all its claims. The instruction was not clearly erroneous.

The second claimed instructional error and the final issue raised by Martinez is that the trial court should have included reckless second-degree murder as a lesser included offense. The trial court instructed the jury on premeditated first-degree murder, felony murder, and a lesser included crime of intentional second-degree murder. Martinez did not object to the instructions.

When the defendant fails to request a lesser included offense instruction, the failure to give the instruction is clearly erroneous "only if the appellate court reaches a firm conviction that, had the instruction been given, there was a real possibility the jury would have returned a different verdict. [Citation omitted.]" *State v. Simmons*, 282 Kan. 728, 741, 148 P.3d 525 (2006).

The duty to instruct on a lesser included offense arises only when evidence supports the lesser crime. The evidence of the lesser

crime does not have to be strong or extensive as long as the jury might reasonably infer the lesser crime from that evidence. The court must give such an instruction even if the evidence is weak and inconclusive and consists solely of the testimony of the defendant. *State v. Kirkpatrick*, 286 Kan. 329, 334, 184 P.3d 247 (2008).

Reckless second-degree murder is defined as "the killing of a human being committed: . . . (b) unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 21-3402(b). Reckless second-degree murder is a lesser included offense of premeditated first-degree murder. *State v. Pierce*, 260 Kan. 859, 865, 927 P.2d 929 (1996).

The jury found Martinez guilty of premeditated murder, rejecting felony murder and the lesser included offense of intentional second-degree murder.

In *Pierce*, this court rejected a requirement of instructing on reckless second-degree murder when the defendant suggested he did not intend to kill the victim but only to defend himself by shooting the victim in the leg. 260 Kan. at 867. In *State v. Bailey*, 263 Kan. 685, 691, 952 P.2d 1289 (1998), this court stated that the "clear message" of *Pierce* was that "a defendant's actions in pointing a gun at someone and pulling the trigger are intentional rather than reckless even if the defendant did not intend to kill the victim."

This "clear message" applies in the present situation. Martinez pointed a gun at someone in the SUV and fired numerous rounds. It is logical to conclude that Martinez' actions were intentional, not merely reckless.

Martinez argues that he was acting in self-defense because he thought that the people in the SUV intended to rob him. It takes a staggering leap of logic to conclude that one would act in self-defense by following a car full of adults and children—who had manifested no immediate sign of intending or attempting to rob anyone and who had left the place where Martinez was partying with his friends—and intentionally drive to their proximity for the express purpose of opening fire on the SUV. The failure to give

the reckless second-degree murder instruction was not clearly erroneous.

Affirmed.