(257 P.3d 1259)
No. 103,566

STATE OF KANSAS, *Appellee*, v. IRA WAYNE FLYNN, *Appellant*.

Opinion filed June 24, 2011.

*Carol Longenecker Schmidt* and *Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Evan C. Watson*, county attorney, and *Steve Six*, attorney general, for appellee.

Before MALONE, P.J., PIERRON and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: Ira Wayne Flynn argues that the jury should have been instructed at his rape trial that he had a reasonable time to cease consensual sexual intercourse once the victim told him to stop. Finding that such an instruction was warranted and had it been given the jury might have acquitted him of rape, we reverse and remand.

## FACTS

Flynn and A.S. drove together to a party. While at the party, Flynn and A.S. drank alcohol and played games. Flynn testified that he started to feel sick because he had consumed too much alcohol and OxyContin. He wanted to leave, and A.S. offered to give him a ride home. Flynn wanted to drive and A.S. let him. They ended up at the scene of the alleged rape. Flynn testified that they both exited the vehicle and met at the front of the car. They took each other's clothes off and began to have consensual sex on the hood of the car. Flynn testified A.S. performed consensual oral sex on him. Flynn and A.S. ended up on the ground, and at that point, according to Flynn, A.S. told Flynn to stop and that she did not want to continue on the ground. Flynn did not stop immediately and testified that it took him anywhere from 30 seconds to 2 minutes to stop. A.S. testified that Flynn then forced her to have sex in the backseat of the car. Flynn denied anything happened inside the car. After their final encounter, they both agreed that Flynn put his clothes back on and helped A.S. put her clothes back on.

A.S. testified that the entire encounter between herself and Flynn was nonconsensual and that he raped her three times while she was overcome by force or fear; he forced her to perform oral sex on him; and he took her to the location against her will and forcibly prevented her from leaving once they got there.

After A.S. and Flynn parted company, Flynn continued to drink alcohol. He called A.S. and indicated that he had " 'fucked up' " and that he would probably go to jail for 2 years. He later explained

at trial that he was on probation for possession of marijuana and he believed his probation would be revoked for drinking and doing drugs. He believed he faced 2 years in jail if his probation was revoked. He explained that he was aware that a rape charge would carry more than 2 years in prison and that he never contemplated that A.S. would claim he raped her. He only feared that it would be discovered he had violated his probation.

Flynn was eventually charged with one count of aggravated kidnapping, one count of kidnapping, three counts of rape, and one count of aggravated criminal sodomy.

At Flynn's trial, after the presentation of State's witnesses, the trial judge and the parties discussed whether any special jury instructions should be submitted and considered. The trial judge and Flynn's counsel discussed a special instruction regarding a defendant's responsibility to cease intercourse within a reasonable time after the victim withdraws her consent. The trial judge indicated that he did not plan to give a special instruction, but if Flynn's counsel wanted to draft the instruction and request it be given to the jury, then he would consider it again. Almost immediately thereafter, the trial judge stated that he was not going to give the instruction, because Flynn's counsel had not specifically requested that the instruction be given. The trial judge said that he would wait to see if the jury asked a question about it.

That evening, at the close of all the evidence, neither party objected to the jury instructions suggested, nor did the parties request any additional jury instructions.

After a 4-day trial, the jury found Flynn guilty of one count of rape, pertaining to the encounter on the ground in front of the car. He was acquitted of all other charges. He was sentenced to an aggravated sentence of 186 months' imprisonment.

## ANALYSIS

*The trial court erred by failing to give an instruction regarding the defendant's responsibility when the victim withdraws consent during intercourse.*

Flynn asserts that the trial court erred when it failed to give the jury a special instruction, based on *State v. Bunyard*, 281 Kan. 392,

133 P.3d 14 (2006), that a defendant has a reasonable amount of time to end the intercourse after the victim withdraws her consent. Flynn believes that there is a real possibility that the jury's verdict would have been different if it had been given what has been referred to as the *Bunyard* instruction.

If there is sufficient evidence to support it, a defendant is entitled to instructions on the law applicable to his or her theory of defense. *State v. Hendrix*, 289 Kan. 859, 861, 218 P.3d 40 (2009). Evidence of the defendant's theory of defense can be supported solely by the defendant's own testimony. *State v. Anderson*, 287 Kan. 325, 334, 197 P.3d 409 (2008). However, the testimony must be such that, when viewed in the light most favorable to the defendant, a rational fact finder would be justified in finding in accordance with that theory. 287 Kan. 325, Syl. ¶ 1.

Because Flynn did not request or proffer an instruction regarding withdrawal of consent and he did not object to its omission, we apply a clearly erroneous standard of review. See K.S.A. 22-3414(3); *State v. Martinez*, 288 Kan. 443, 451, 204 P.3d 601 (2009). "An instruction is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." 288 Kan. at 451-52.

In determining whether an instruction was required and, if given, would have made a difference in this case, a brief review of our Supreme Court's ruling in *Bunyard* is in order.

In *Bunyard*, there was no dispute that the sexual intercourse between the defendant and the victim was initially consensual, but the victim withdrew her consent after the defendant had already penetrated her. The Kansas Supreme Court held "that the defendant should be entitled to a reasonable time in which to act after consent is withdrawn and communicated to the defendant." 281 Kan. at 414. Moreover, the *Bunyard* court ruled that, in response to a jury question, "the trial court had a duty to instruct the jury that post-penetration rape can occur under Kansas law and that the defendant has a 'reasonable time' to respond to the withdrawal of consent." 281 Kan. at 415. Furthermore, our Supreme Court held that "[a] reasonable time depends upon the circum-

stances of each case and is judged by an objective reasonable person standard to be applied by the trier of fact on a case-by-case basis." 281 Kan. at 416. Recognizing that it always encourages trial courts to follow the Pattern Instructions for Kansas (PIK) and recognizing that no such instruction existed in PIK for this situation, the Supreme Court outlined with approval responses to jury questions that had been given in other states under similar circumstances. 281 Kan. at 415-16.

Shortly after *Bunyard,* the following paragraph was added to the comments section of PIK Crim. 3d 57.01:

"A person may be convicted of rape if consent is withdrawn after the initial consensual penetration but intercourse is continued by the use of force or fear. However, when consent is withdrawn after penetration the defendant is entitled to a reasonable time in which to act after the withdrawn consent is communicated to the defendant. Whether the termination of intercourse occurs within a reasonable time is to be determined by the jury, taking into account the manner in which consent was withdrawn and the particular facts of each case. [Citation omitted.]"

Since *Bunyard* was decided, this court has recognized that if the facts support a *Bunyard* instruction one must be given. See *State v. Robinson,* No. 99,443, 2009 WL 1140256 (Kan. App. 2009), *rev. denied* 290 Kan. 1102 (2010) (unpublished opinion) (finding that the facts did not support the giving of such an instruction).

Turning back to this case, Flynn testified that at the time he and A.S. ended up on the ground, the sexual encounter was consensual. A.S. told Flynn to stop after they were on the ground by saying, "No. Not on the ground." Flynn did not stop immediately and testified that it took him anywhere from 30 seconds to 2 minutes to stop. This was consistent with what he told investigators at the time. A.S. testified that at no point during the encounter was there ever consent. This was consistent with what she told investigators at the time. At the conclusion of the State's case, before Flynn even testified, the trial judge indicated some concern that, based on the evidence, the jury might send out a question regarding withdrawal of consent. Although he indicated he was not familiar with *Bunyard,* he indicated he would wait and deal with the issue if a jury question arose. Based on the defendant's subsequent testimony, as well as his statement to investigators at the time, and the

judge's concern that the jury might be confused, we find that when viewed in the light most favorable to Flynn, a rational fact finder would be justified in finding in accordance with Flynn's theory of defense; therefore, a *Bunyard* instruction should have been given in this case.

However, that does not end our inquiry. Because Flynn did not request such an instruction, under the "clearly erroneous" standard, we must next decide whether there was a real possibility that the jury would have rendered a different verdict if the instruction had been given.

The jury convicted Flynn of the rape that occurred on the ground in front of A.S.'s vehicle. This was the only sexual encounter during which Flynn admitted A.S. told him to stop, she did not wish to continue having sex. He also admitted that he did not stop immediately, but instead continued for 30 seconds to 2 minutes. Apparently, the jury found Flynn's testimony generally more credible than A.S.'s testimony because it acquitted Flynn of the remaining counts of rape: one on the hood of the car, which he claimed was consensual and she claimed was not, and one in the backseat of the car, which he claimed never occurred at all. Additionally, Flynn was acquitted of both aggravated kidnapping and kidnapping, the jury presumably finding that the State was unable to prove that Flynn confined A.S. by force or threat with the intent to commit a crime. And finally, the jury acquitted Flynn of the aggravated criminal sodomy or oral sex charge. Although the dissent suggests that in convicting Flynn of only one count of rape the jury may have been simply responding to the multiple charges filed from essentially one continuing sexual encounter, we have to assume that the jurors acted according to the instructions given and considered each crime as separate and distinct, deciding each charge separately on the evidence and law applicable to it, uninfluenced by their decision as to any other charges. See *State v. Tyler*, 251 Kan. 616, 638, 840 P.2d 413 (1992).

Based on the foregoing, there is reason to believe that if the jury had been given the special *Bunyard* instruction, the jury might have acquitted Flynn of the remaining rape charge. Accordingly,

we find that the trial court erred when it failed to give the special *Bunyard* instruction.

Given our holding, the remaining issues raised by Flynn are moot. Flynn's rape conviction is reversed, and the case is remanded to the district court for a new trial.

\* \* \*

MALONE, J., dissenting: I respectfully dissent. In my opinion, the trial court's failure to give a jury instruction based on *State v. Bunyard*, 281 Kan. 392, 133 P.3d 14 (2006), was not clearly erroneous under the facts of this case where the trial court never received a question from the jury regarding withdrawal of consent during intercourse.

I will begin my analysis by mentioning some pertinent facts of the case which are not included in the majority opinion. According to Ira Wayne Flynn's own testimony, A.S. began to cry at the scene of their sexual encounter. He asked her what was wrong, and she declined to answer. Flynn attempted to make conversation with A.S., but she never responded. Flynn drove to Shawn Howell's house, and A.S. remained silent during the drive. Flynn testified that when he came to a stop, A.S. "took out, she left." A.S. immediately reported the rape to her friends, and within a few hours, she reported the rape to law enforcement.

Flynn further testified that he attempted to call A.S. three times that night. In the first phone call to A.S., Flynn left a message indicating that he had "fucked up." In the second phone call to A.S., Flynn left a message indicating that he realized he would have to do about 2 years of jail time. In his third phone call to A.S., Flynn left a message saying that he would call the cops himself so that she would not call the cops and he apologized to A.S. because he thought that she was angry with him. The recorded phone messages were played to the jury.

Flynn also testified that at the time of the alleged rape he was on probation for possession of paraphernalia and possession of marijuana. Flynn presented this testimony to mitigate the fact that one of his phone messages to A.S. indicated that he would be

spending some time in jail. In addition, Flynn testified that, as a juvenile, he committed a "smash and grab" at a video store.

Turning to *Bunyard,* this was a case of first impression in Kansas concerning rape and the withdrawal of consent after penetration. The defendant was charged with three counts of rape stemming from three separate incidents with different women over a 2-year period. The prosecutor combined all three charges into one complaint, and the defendant's motion to sever the charges was denied by the trial court. At trial, the defendant was acquitted of two of the charges but found guilty of one count of rape. On the guilty count, there was no dispute that the sexual intercourse between the defendant and the victim initially was consensual, but the victim withdrew her consent after the defendant had already penetrated her. After 5 or 10 minutes had passed, the defendant stopped having sexual intercourse with the victim.

During deliberations, the jury posed the following question to the court: " 'If someone allows penetration, but then says no and he does not stop, does that fit the legal definition of rape? Please elaborate on the law. . . .' " 281 Kan. at 408. In response to the jury's question, the trial judge referred the jury to the instructions that had already been given and indicated that the court could not elaborate any further.

On appeal, the Kansas Supreme Court held that the trial court did not abuse its discretion in denying the motion to sever the charges. 281 Kan. at 403. Regarding the issue of withdrawal of consent after penetration, the court determined that K.S.A. 2004 Supp. 21-3502(a)(1)(A) proscribes all nonconsensual sexual intercourse that is accomplished by force or fear, not just the initial penetration. Thus, under the language of the statute, the court concluded that a person may be convicted of rape if consent is withdrawn after the initial penetration but intercourse is continued by the use of force or fear. 281 Kan. at 412.

In addition, the court went beyond the statutory language and determined that in the case of consensual intercourse and withdrawn consent, a defendant is entitled to a reasonable time in which to act after the consent is withdrawn. The court concluded that a reasonable time depends upon the circumstances of each

case and is judged by an objective standard to be determined by the trier of fact under the circumstances of each individual case. 281 Kan. at 414-15. Regarding the trial court's response to the question from the jury, the court outlined with approval responses to jury questions that had been given in other states under similar circumstances. The court held that, under the facts of the case, "the trial court's answer to a question posed by the jury was insufficient to properly instruct the jury how to consider this unique case of first impression. The problem with the trial court's response is that it failed to address the question asked by the jury." 281 Kan. at 410.

After the Supreme Court decided *Bunyard*, the PIK committee cited the holding of the case in the comment section of PIK Crim. 3d 57.01. However, in the 5 years since *Bunyard* was decided, the PIK committee has not seen fit to draft a new instruction incorporating the *Bunyard* holding as a jury instruction to be given by trial courts in Kansas prior to the commencement of deliberations.

I dissent from the majority's reliance on the *Bunyard* decision for two reasons. First, for whatever it may be worth, I agree with Justice Luckert's dissenting and concurring opinion in *Bunyard*. Justice Luckert agreed with the majority that a defendant has committed rape if, after consent is withdrawn, the act of intercourse continues as the result of force or fear. 281 Kan. at 425. As Justice Luckert pointed out, this holding is consistent with the elements of rape defined by K.S.A. 2004 Supp. 21-3502(a)(1)(A). However, Justice Luckert stated that the court should not judicially add a defense allowing a reasonable time in which to commit rape. 281 Kan. at 425. I agree that the Kansas appellate courts should not add a judicially created defense to rape that is not found in the express language of the statute, and I believe the Kansas Supreme Court should reevaluate its holding in *Bunyard* on this point.

Of course, I recognize that the Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). The main reason for my dissent is because the present case is factually and legally distinguishable from *Bunyard*. An obvious

factual distinction is that in *Bunyard*, there was no dispute that the sexual intercourse between the defendant and the victim was initially consensual. Here, A.S. testified that the entire encounter between herself and Flynn was nonconsensual and that he raped her. Given the fact that A.S. never agreed that any part of the encounter was consensual, the issue of withdrawal of consent was not squarely before the jury in this case as it was in *Bunyard*. Thus, the trial court's decision to wait for a question from the jury before addressing the issue seems to have been a prudent approach under the facts of the case.

This leads to the most obvious distinction between *Bunyard* and the present case. *Bunyard* involved a request from the jury for specific clarification of the law on withdrawal of consent after penetration. In *Bunyard*, the jury was obviously struggling with this issue and asked the trial court for guidance on the law. The trial court essentially ignored the jury's request, referred the jury to the original instructions, and indicated the court could not elaborate further. The *Bunyard* court held that under the facts of the case, the trial court failed to provide the jury with a complete answer to its question concerning the charge of rape. 281 Kan. at 415-16. The court outlined with approval responses to jury questions that had been given in other states under similar circumstances, but the court did not address the issue beyond this context.

This case would present a much closer issue for me if the defendant had requested a jury instruction at trial. But as the majority notes, Flynn did not request or proffer an instruction regarding withdrawal of consent and he did not object to its omission at trial. Even on appeal, Flynn has not proposed a specific instruction that he believes the trial court should have provided to the jury. Under these circumstances, an appellate court applies a clearly erroneous standard of review. K.S.A. 22-3414(3); *State v. Martinez*, 288 Kan. 443, 451, 204 P.3d 601 (2009). "An instruction is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." 288 Kan. at 451-52.

According to Flynn's own testimony, A.S. began to cry at the scene of their sexual encounter. He asked her what was wrong and

she declined to answer. As Flynn drove back to Howell's house, he attempted to make conversation with A.S., but she never responded. When Flynn stopped the car in front of Howell's house, A.S. took off and left her own car behind. A.S. immediately reported the rape to her friends, and within a few hours, she reported the rape to law enforcement.

Also according to Flynn's own testimony, he attempted to call A.S. three times that night. In the first phone call to A.S., Flynn left a message indicating that he had "fucked up." In the second phone call to A.S., Flynn left a message indicating that he realized he would have to do about 2 years of jail time. In his third phone call to A.S., Flynn left a message saying that he would call the cops himself so that she would not call the cops, and he apologized to A.S. because he thought that she was angry with him. The recorded phone messages were played to the jury.

Granted, the jury only convicted Flynn of one count of rape and the jury acquitted Flynn of the other charges. But I think the majority reads too much into this verdict. For all we know, the guilty verdict on only one count of rape may have been the jury's response to the multiple charges filed against Flynn arising from essentially one continuing sexual encounter between the parties. Further, Flynn cannot say that a jury instruction based on *Bunyard* was necessary to support his theory of defense, because his theory of defense was that his entire sexual encounter with A.S. was consensual.

During deliberations, the jury never inquired about the law concerning withdrawal of consent after penetration, and the jury never gave any indication that the original jury instructions provided by the court were insufficient. Considering the record as a whole, I am not firmly convinced there is a real possibility the jury would have rendered a different verdict had the district court provided a jury instruction based on *Bunyard*. Accordingly, I conclude the trial court's failure to do so was not clearly erroneous, and Flynn's conviction of one count of rape should be affirmed.