(264 P.3d 116)

No. 104,083

STATE OF KANSAS, *Appellee*, v. STEPHEN BERNARD FOSTER, *Appellant*.

Opinion filed August 26, 2011.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Darren E. Root*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, for appellee.

Before ATCHESÓN, P.J., HILL and STANDRIDGE, JJ.

STANDRIDGE, J.: Stephen Bernard Foster appeals his convictions and sentences for one count each of forgery, attempted theft, and possession of marijuana, arguing that there was insufficient evidence to support the conviction of forgery and that the district court erred in failing to give the jury an accomplice instruction. Foster also argues that the district court violated his Sixth and Fourteenth Amendment rights to the United States Constitution by enhancing his sentences based upon his prior criminal history without requiring his criminal history be proven to a jury beyond a reasonable doubt.

## FACTS

Kajsa Freed is an employee at CheckSmart, a check cashing business. Freed testified that on the night of October 8, 2008, Foster came into CheckSmart and attempted to cash a $900 check made payable to him from a local business named Affordable Paintball. Freed stated that CheckSmart's procedure for cashing checks required its employees to contact the person who wrote the check and verify the check number, the dollar amount, and the person to whom the check is written. The procedure also required the customer to fill out a form with his or her personal information. In conjunction with this procedure, Freed attempted to contact Affordable Paintball but was unable to reach a representative in order to verify the check presented by Foster. Freed did, however, leave two messages regarding the $900 check Foster was attempting to cash.

The next morning, a representative from Affordable Paintball contacted CheckSmart and instructed CheckSmart not to cash any of the checks drawn on its account because the checks had been stolen. The representative further stated that Foster had never performed any work for the company and was unknown to the company in any personal or professional capacity.

Later that day, Foster returned to CheckSmart and attempted to cash a $350 check drawn on Affordable Paintball's account and made payable to Foster. Freed notified Robert Beach, general manager of CheckSmart, that Foster had returned with a second

check, and Beach called the police. In order to keep Foster at CheckSmart until police arrived, Foster was told that the check was in the process of being verified. Police arrived approximately 10 minutes later and arrested Foster. During a search incident to arrest, the police found marijuana in Foster's keychain.

Beach testified at trial that Freed had followed CheckSmart's regular check verification process, that Foster had provided his personal information, and that Affordable Paintball had contacted CheckSmart and reported its checks as stolen. Ken Usrey, the owner of Affordable Paintball, identified the $350 check as one of the checks stolen from his home. Usrey testified that the checking account was used to pay the company's suppliers. Usrey denied writing, signing, or dating the check, or giving anyone else permission to do so. Furthermore, Usrey testified that he did not know Foster, that Foster had never done any work for him, and that he never owed Foster any money.

Several police officers also testified. Officer Grant Mink, a patrol officer for the Topeka Police Department, testified that on October 9, 2008, he was dispatched to CheckSmart in relation to a forgery. Foster told Mink that he had received the $350 check in question for doing lawn work. Officer Joseph Kinnett, another police officer for the Topeka Police Department who arrived at CheckSmart to provide backup, testified that Foster told Officer Mink that he had received the check for doing lawn work for somebody and that he had no knowledge that the check might have been forged or stolen. Finally, Officer Patrick McLaughlin, a detective for the Topeka Police Department, testified that he interviewed Foster on October 9, 2008. At the outset of that interview, Foster stated that he had agreed to cash the $900 check as a favor to a family friend, Randy Ridens. Since CheckSmart could not verify and cash the $900 check, he and Ridens returned to CheckSmart the next day with the $350 check. Later in the interview, Foster stated he was to receive one-third of the cashed check.

Foster testified at trial on his own behalf. Foster stated that Ridens owed him $350 for yard and automobile work he did for Ridens. Foster stated that Ridens came to his house and presented him with a $900 check made payable to Foster from Affordable

Paintball as payment for the money owed. Foster testified that Ridens told him that Ridens worked for Affordable Paintball and that Ridens requested the paycheck be made payable to Foster in order to satisfy Ridens' debt to Foster. Foster confirmed that he was unable to cash the $900 check at CheckSmart because the check could not be verified by Affordable Paintball. Foster stated that he returned the $900 check to Ridens and asked for a different check in the exact amount owed to him. Foster testified Ridens returned the next day with the $350 payroll check. When Foster returned to CheckSmart that day to cash the $350 check, the police were called, and he was arrested. Foster testified Ridens never told him it was a bad check and that he never intended to defraud anybody. Foster stated that when he told the police detective he was to receive one-third of the check, he meant one-third of the $900 check because of the money Ridens owed him.

Ridens testified at trial pursuant to an immunity agreement. Ridens stated that his friend, Casey Ferguson, was the individual who created both the $900 check and the $350 check by writing the date, the amount, the name of the payee (Foster), and the signature on a blank check belonging to Affordable Paintball. Ridens further stated Ferguson told Foster that he would receive 50 percent of any check he cashed. With regard to the $900 check, Ridens observed Ferguson give the check to Foster on October 8, 2008, after which Ridens and Ferguson drove with Foster to CheckSmart and dropped Foster off so that he could cash the check. Ridens denied telling Foster the check was a payroll check and denied owing Foster any money. Ridens testified that Foster was told the check was stolen. With regard to the $350 check, Ridens observed Ferguson give the check to Foster on October 9, 2008, after which Ridens drove to CheckSmart and dropped Foster off so that he could cash the check. Ridens again testified that Foster was aware the check was not a payroll check, that Ridens never worked for Affordable Paintball, and that Affordable Paintball never paid Ridens any money.

SUFFICIENCY OF THE EVIDENCE

Foster argues his conviction of forgery pursuant to K.S.A. 21-

3710(a)(2) must be overturned because there was insufficient evidence presented at trial to support both alternative means of "issuing" and "delivering" a check, which necessarily makes it impossible to determine whether the jury was unanimous in deciding the means of the crime. Although Foster concedes there may have been sufficient evidence for the jury to convict him of "delivering" a fraudulent check, he maintains there was insufficient evidence to convict him of "issuing" the check.

In order to resolve the sufficiency of the evidence issue presented by Foster, we first must determine whether the legislature intended K.S.A. 21-3710(a)(2) to provide alternative means of committing the crime of forgery by defining it as "issuing" or "delivering" a fraudulent written instrument. If the legislature did not so intend, Foster concedes sufficient evidence and our analysis ends. If we determine that the legislature did intend to provide alternative means of committing forgery in this subsection of the statute, then we conduct a second analysis to determine whether there was sufficient evidence presented at trial to support a finding by the jury that Foster issued the check.

*Alternative Means*

The jury in a criminal case is required to arrive at a unanimous verdict. In a case in which there are alternative means by which the crime can be committed, it is possible for some jurors to arrive at one alternative means to support a conviction and other jurors to settle on the other alternative means. Notably, our Supreme Court has held that the defendant's right to a unanimous verdict is not undermined when this happens so long as there was sufficient evidence presented at trial to support each alternative means for committing the crime. See *State v. Wright*, 290 Kan. 194, Syl. ¶ 2, 224 P.3d 1159 (2010); *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994).

In this first part of our analysis, we must determine whether the legislature intended K.S.A. 21-3710(a)(2) to provide alternative means of committing the crime of forgery by defining its commission as "issuing" or "delivering" a fraudulent written instrument. Interpretation of a statute is a question of law over which an ap-

pellate court has unlimited review. See *State v. Arnett,* 290 Kan. 41, 47, 223 P.3d 780 (2010). As a general rule, criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt as to the meaning of the statute is decided in favor of the accused. Nevertheless, this rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to achieve legislative design and intent. *State v. Trautloff,* 289 Kan. 793, 796-97, 217 P.3d 15 (2009).

We begin with the statute itself, K.S.A. 21-3710(a), which defines forgery as

- issuing or delivering a written instrument
- with an intent to defraud and
- with the knowledge that the person who made, altered, or endorsed it, whether real or fictitious, purported to have authority to do so but did not.

Foster argues that "issuing" and "delivering" cannot mean the same thing because the legislature used both terms in the statute and, as a general rule, courts should presume that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture,* 281 Kan. 603, 631, 132 P.3d 870 (2006).

Although the Kansas Criminal Code does not define these terms, the forgery statute pertains to written instruments; thus, we find it instructive to consider the definitions set forth in the Kansas Uniform Commercial Code (UCC) in pari materia with K.S.A. 21-3710(a)(2). Under K.S.A. 84-3-105(a), "issue" is defined as "the first delivery of an instrument by the maker or drawer . . . for the purpose of giving rights on the instrument to any person." Under K.S.A. 2010 Supp. 84-1-201(15), "delivery" with respect to an instrument means voluntary transfer of possession. While the two terms do not share precisely the same definition, it is evident that the more general term "delivering" encompasses the more specific term "issuing." In keeping with this analysis, we find the UCC definitions for issuing and delivering a negotiable instrument readily demonstrate that each of these acts is related to transferring possession of a negotiable instrument that already has been cre-

ated. Bearing in mind that judicial interpretation must be reasonable and sensible to effect legislative design and intent, we conclude the legislature did not intend for "issuing" and "delivering" a fraudulent written instrument to be alternative means of committing forgery.

In addition to the particular language used in this particular subsection of the statute, our conclusion that the legislature did not intend for "issuing" and "delivering" a fraudulent written instrument to be alternative means of committing forgery is further supported by construing that language in the context of K.S.A. 21-3710(a) as a whole. Although the underlying facts of this case frame the issue as one requiring the court to consider the meaning of subsection (2) of this statute, courts are not permitted to consider only a certain isolated part or parts of an act, but are required, if possible, to consider and construe together all parts thereof in pari materia. It is the court's duty to reconcile the different provisions, as far as practicable, so as to make them consistent, harmonious, and sensible. *McIntosh v. Sedgwick County*, 282 Kan. 636, 642, 147 P.3d 869 (2006).

To that end, and as shown below, K.S.A. 21-3710(a) defines the act of forgery in the context of three separate subsections, each of which contains a list of prohibited actions joined by commas and the conjunction "or," and each of which refers to the act of making, altering, or endorsing a written instrument. In light of the corresponding grammatical structure and the overlap in language, we find that a determination regarding whether the legislature intended to provide alternative means in subsection (2) must be made in the context of the K.S.A. 21-3710(a) statutory scheme as a whole. To the extent this requires us to construe those subsections within the statute that are not directly implicated by the particular facts presented in this case, we conclude such construction is not advisory but rather necessary to the proper resolution of the issue presented.

K.S.A. 21-3710(a) defines the act of forgery in the context of three separate subsections:

"(a) Forgery is knowingly and with intent to defraud:

(1) Making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed by another person, either real or fictitious, and if a real person without the authority of such person; or altering any written instrument in such manner that it purports to have been made at another time or with different provisions without the authority of the maker thereof; or making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed with the authority of one who did not give such authority;

(2) issuing or delivering such written instrument knowing it to have been thus made, altered or endorsed; or

(3) possessing, with intent to issue or deliver, any such written instrument knowing it to have been thus made, altered or endorsed."

Subsection (a)(1) defines forgery as the "[m]aking, altering or endorsing" of a fraudulent written instrument. As with subsection (a)(2), the Kansas Criminal Code does not define these three words; thus, we again find it instructive to consider how the legislature chose to define these words in the context of negotiable written instruments as set forth in the UCC. Under K.S.A. 2010 Supp. 84-3-103(a)(5), making a written instrument means signing it as a person undertaking to pay (the "maker"). Under K.S.A. 84-3-407(a), altering a written instrument means (1) making an unauthorized change that purports to modify the obligation of a party or (2) making an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party. Under K.S.A. 84-3-204(a), endorsing means signing the written instrument (in a capacity other than drawer, maker, or acceptor) for the purpose of (1) negotiating the instrument, (2) restricting payment of the instrument, or (3) incurring liability to pay on the instrument. When we consider the specialized meaning that attaches in the context of negotiating written instruments, we find the UCC definitions for making, altering, or endorsing a negotiable instrument readily establish that each of these acts is related to the creation of an instrument for the purpose of negotiating it, whether it is the first or a subsequent negotiation.

As noted above, subsection (a)(2) defines forgery as the "issuing or delivering" of a fraudulent written instrument with the knowledge that the person who made, altered, or endorsed it did not have the authority to do so. As also noted above, we find the UCC

definitions for issuing and delivering a negotiable instrument readily demonstrate that each of these acts is related to transferring possession of a negotiable instrument that already has been created, whether it is the first or a subsequent transfer.

Finally, subsection (a)(3) defines forgery as the "possessing, with intent to issue or deliver" a fraudulent written instrument. Unlike the terms used in subsections (a)(1) and (a)(2), the term "possession" is now defined within the revised 2011 Kansas Criminal Code. More specifically, " '[p]ossession' means having joint or exclusive control over an item with knowledge of or intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." L. 2010, ch. 136, sec. 11(t). In the context of K.S.A. 21-3710(a)(3), then, the act of possessing a fraudulent instrument with an intent to transfer it is wholly separate and distinct from the act of creating such an instrument under K.S.A. 21-3710(a)(1) and from the act of actually transferring possession of such an instrument under K.S.A. 21-3710(a)(2).

Although adopted by our legislature for purposes of regulating negotiable written instruments in a civil context, we find the UCC definitions set forth above are equally applicable in a criminal context to the forgery statute at issue here. In light of these definitions, as well as the overall structure and organization of the statute, we necessarily conclude that the legislature intentionally segregated what it intended to be three alternative means of committing forgery—creating, transferring, and possessing a fraudulent instrument—into three different subsections.

This conclusion is consistent with two of this court's unpublished opinions that address similar issues: *State v. Christman*, No. 96,489, 2007 WL 1597810, *rev. denied* 285 Kan. 1175 (2007), and *State v. Lilly*, No. 97,959, 2008 WL 3004950 (2008), *rev. denied* 287 Kan. 768 (2009). In *Christman*, this court upheld the defendant's conviction for forgery under K.S.A. 2006 Supp. 21-3710(a)(2), finding that there was sufficient evidence insofar as the State was required to prove "delivering" under the statute. *Christman*, 2007 WL 1597810, at *3. Because this panel of our court upheld the conviction without also addressing whether there was sufficient

evidence to support a conviction of "issuing" as an alternative means of committing forgery, it appears the court did not consider "issuing" and "delivering" to be alternative means.

In *Lilly*, the defendant was charged with knowingly "issuing" *and* "delivering" a fraudulent written instrument under K.S.A. 21-3701(a)(2). This court found that because the defendant had been charged with both "issuing" and "delivering," the State was required to prove both. *Lilly*, 2008 WL 3004950, at *2. However, because the parties and the district court had agreed at trial that "issuing" and "delivering" had the same meaning, the defendant could not argue on appeal that the State was required to prove two different acts as such a claim would be tantamount to invited error. *Lilly*, 2008 WL 3004950, at *2. Nonetheless, our court in *Lilly* stopped short of endorsing the position that "issuing" and "delivering" are one and the same for the purposes of the forgery statute.

We note, however, that a panel of our court recently rendered an unpublished decision completely at odds with the one we make today. *State v. Owen*, No. 102,814, 2011 WL 2039738 (2011). In *Owen*, the defendant was charged with two counts of forgery, one alleging Owen knowingly made, altered, or endorsed a fraudulent written instrument pursuant to K.S.A. 21-3701(a)(1) and the other alleging Owen issued or delivered a fraudulent written instrument that she knew had been made, altered, or endorsed without the requisite authority pursuant to K.S.A. 21-3701(a)(2). A jury found Owen guilty on both counts. On appeal, Owen sought to have both forgery convictions overturned based on insufficient evidence to support each alternative means of forgery charged. Although conceding there was sufficient evidence presented from which the jury could find guilt for the making and altering of a fraudulent instrument, Owen argued there was no evidence of endorsing a fraudulent instrument.

Citing only a limited portion of the generic definition set forth in Black's Law Dictionary, the *Owen* court held as a matter of law that the definitions of "endorse" and "endorsement" as used in the forgery statute were necessarily restricted to the act of "signing the back of a check." See Black's Law Dictionary 843 (9th ed. 2009) (defining endorse as a verb meaning "[t]o sign (a negotiable in-

strument), usu. on the back, either to accept responsibility for paying an obligation memorialized by the instrument or to make the instrument payable to someone other than the payee"). Finding this unduly restrictive definition to be inconsistent with the act of making and altering of a fraudulent written instrument, the *Owen* court concluded that making, altering, and endorsing were each alternative means of committing forgery. Accordingly, and notwithstanding evidence that Owen made, altered, issued, and delivered a fraudulent written instrument, the court thereafter reversed both of the fraud convictions because there was no evidence that Owen signed the back of the fraudulent written instrument. *Owen,* 2011 WL 2039738, at *5. See K.S.A. 21-3710(a)(1) (defining forgery as the *making, altering, or endorsing* of a written instrument); K.S.A. 21-3710(a)(2) (defining forgery as the "issuing or delivering" of a written instrument with *knowledge that the person who made, altered, or endorsed it* did not have authority to do so).

We respectfully disagree with the conclusion reached by the *Owen* court and find the better interpretation of this statutory scheme is one that incorporates those particular statutory definitions in the UCC that are relevant to negotiable written instruments and that considers and construes the forgery statute as a whole in order to make the provisions therein consistent, harmonious, and sensible.

### Delivering a Fraudulent Check

Based on our conclusion that this is not an alternative means case, we need only to decide whether, after reviewing all the evidence, viewed in the light most favorable to the prosecution, a reasonable factfinder could have found Foster guilty of delivering a fraudulent check knowingly and with intent to defraud. See *Trautloff,* 289 Kan. at 800 (When the sufficiency of evidence is challenged in a criminal case, the reviewing court considers all the evidence, viewed in the light most favorable to the prosecution, to determine whether the court is convinced that a rational factfinder could have found defendant guilty beyond a reasonable doubt.). It is undisputed that Foster delivered the check to CheckSmart with the intent to cash it. Therefore, the only issue before the jury was

whether Foster did so knowing the check to be fraudulent. In this case, the record contains sufficient evidence to support such a finding. According to various witnesses' testimony, Foster offered several stories regarding the $350 check: payment for work, cashing the check as a favor to Ridens, and receiving a portion of the check as payment for cashing it. Additionally, Ridens testified Foster was specifically advised that the check had been stolen. While the record also contains evidence that Foster did not know the check was forged, most notably the testimony of Foster himself, the trier of fact is the sole arbiter of witness credibility, the weight of evidence, and any reasonable inferences therefrom. *State v. Green*, 280 Kan. 758, 761, 127 P.3d 241, *cert. denied* 549 U.S. 913 (2006) (appellate court does not reweigh evidence or reevaluate credibility of witnesses).

## ACCOMPLICE JURY INSTRUCTION

Next, Foster asserts the district court erred in failing to give the jury an accomplice instruction. Where a party neither suggests an instruction nor objects to its omission, as here, an appellate court reviewing a district court's giving or failure to give a particular instruction applies a clearly erroneous standard. *State v. Martinez*, 288 Kan. 443, 451, 204 P.3d 601 (2009); see K.S.A. 22-3414(3). Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility that the jury could have rendered a different verdict absent the error. *State v. Carter*, 284 Kan. 312, 324, 160 P.3d 457 (2007).

The first issue to be resolved is whether Ridens was an accomplice to any of the crimes with which Foster was charged. PIK Crim. 3d 52.18 provides: "An accomplice witness is one who testifies that (he)(she) was involved in the commission of the crime with which the defendant is now charged. You should consider with caution the testimony of an accomplice." The Kansas Supreme Court has held that the definition of accomplice under this instruction is consistent with the general view that " '[a] person is an "accomplice" of another in committing a crime if, with the intent to promote or facilitate the commission of the crime, he solicits, requests, or commands the other person to commit it, or aids the

other person in planning or committing it.' " *State v. Simmons*, 282 Kan. 728, 737, 148 P.3d 525 (2006) (quoting 1 Torcia, Wharton's Criminal Law § 38, p. 220 [15th ed. 1993]). With that said, the Supreme Court repeatedly has held that mere presence during the planning or commission of a crime does not make one an accomplice. See *Simmons*, 282 Kan. at 738.

Here, Ridens testified that he was present when both the $900 check and the $350 check were given to Foster—specifically, that he and his friend dropped Foster off at CheckSmart when Foster attempted to cash the $900 check, and that he was the driver of the vehicle when Foster was given the $350 check. Ridens testified that he was aware that the checks were stolen and that they had been written out by a third person, Ferguson, and not by the owner of Affordable Paintball. He drove Foster to CheckSmart after he received the $350 check, thereby aiding Foster in his attempt to cash the check. According to his own testimony, Ridens' actions regarding the checks went beyond "mere presence" during the planning and commission of the crime and indicate that he actively assisted Foster. This evidence, along with a grant of immunity from the prosecution for offenses related to the $900 and $350 checks in exchange for his testimony, is sufficient to support a finding that Ridens was an "accomplice" within the meaning of the accomplice instruction.

Because Ridens was an accomplice, we now must determine whether the district court's failure to provide an accomplice instruction to the jury constituted clear error such that, had an accomplice instruction been provided, there was a real possibility that the jury could have delivered a different verdict. Foster argues that the district court's failure to give an accomplice instruction was clearly erroneous because absent Ridens' testimony, the evidence that Foster knew the check was forged was "otherwise so underwhelming." He contends that the added caution afforded by an accomplice instruction could have been the tipping factor in whether the jury accepted Ridens' testimony.

As previously discussed, the record contains sufficient evidence to support Foster's conviction for forgery. Even absent Ridens' direct testimony that Foster was informed the checks were stolen,

the jury reasonably could infer Foster knew the checks were stolen from the various witnesses' testimony that Foster gave differing stories surrounding the checks' origins. See *State v. Scaife*, 286 Kan. 614, 618, 186 P.3d 755 (2008) (jury may infer existence of material fact from circumstantial evidence, even though evidence does not exclude every other reasonable conclusion or inference).

Furthermore, a failure to provide the jury with a cautionary accomplice witness instruction does not constitute error when the jury is cautioned about the weight to be accorded testimonial evidence in other instructions. *Simmons*, 282 Kan. at 740. In the instant case, the jury instructions included PIK Crim. 3d 52.09, which states: "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified." The jury was aware that Ridens testified under a grant of immunity for the forgery crime with which Foster was charged. The jury also was aware that Ridens had previous convictions for forgery. Therefore, it is reasonable to conclude that, even absent an accomplice instruction, the jury would naturally receive Ridens' testimony with caution.

For the above reasons, we find no real possibility that the jury would have returned a different verdict had it received an accomplice instruction regarding Ridens' testimony; thus, we find no clear error.

## CRIMINAL HISTORY

Finally, Foster claims the use of his criminal history to enhance the sentencing penalty for his conviction constituted a violation of due process pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). In *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), however, the Kansas Supreme Court rejected the claim Foster now asserts. We are bound by the holding in *Ivory* absent some indication the court is departing from this holding. See *State v. Barajas*, 43 Kan. App. 2d 639, 649, 230 P.3d 784 (2010). We see no such indication. Thus, this claim fails.

Affirmed.